**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES T. CARNEY, *on behalf of himself* ) <br> *and all others similarly situated*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> British Airways PLC, *a corporation*, ) <br> ) <br> Defendant. ) | Case No. 2:25-cv-302-CCW-CBB |

<u>**BRITISH AIRWAYS PLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

Defendant British Airways Plc ("BA"), through counsel, hereby respectfully submits its Motion to Dismiss Plaintiff James T. Carney's Complaint (ECF No. 1-1) in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), including Count I (violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law) and Count II (fraud), with prejudice. In support, BA submits its Memorandum of Law, the Declaration of Keara M. Gordon, dated January 21, 2026 and the exhibits attached thereto, and any such other matters as may be presented to the Court.

Dated: January 21, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

<u>/s/ Stephen H. Barrett</u>
Stephen H. Barrett
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
215-656-2455
Stephen.barrett@us.dlapiper.com

Keara M. Gordon*
Colleen Carey Gulliver*
Connor D. Rowinski*
1251 Avenue of the Americas

New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
connor.rowinski@us.dlapiper.com

(*admitted pro hac vice)

*Counsel for Defendant British Airways Plc*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES T. CARNEY, *on behalf of himself and all others similarly situated*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:25-cv-302-CCW-CBB |
| British Airways PLC, *a corporation*, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
<u>BRITISH AIRWAYS PLC'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTS ........................................................................................................................................3

      A.     Travel on BA Is Subject to the COC to Which Customers Consent. ......................3

      B.     The COC Gave BA The Express Right to Cancel the Plaintiff's Flight When He Did Not Show Up for The Outbound Flight. ..........................................................4

      C.     Plaintiff's E-Ticket Also Reminded Customers About the COC, the Importance of Reading it, and Provided a Link to Read it. ...............................................................4

      D.     The Plaintiff, James T. Carney, Esq. ....................................................................5

LEGAL STANDARD...................................................................................................................6

ARGUMENT ..............................................................................................................................6

THE ADA PREEMPTS THE PLAINTIFF'S CLAIMS. ..............................................................6

THE UTPCPL AND FRAUD CLAIMS FAIL FOR ADDITIONAL REASONS.........................10

      A.     There Was No Omission. .....................................................................................11

      B.     The Plaintiff Fails to Plead Justifiable Reliance and Causation. ...........................13

      C.     BA Did not Have a Duty to Disclose.....................................................................16

      D.     There is No Fraudulent Intent Plausibly Alleged. ................................................18

DISMISSAL WITH PREJUDICE IS APPROPRIATE. ..............................................................19

CONCLUSION..........................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Airs., Inc. v. Wolens*,
  513 U.S. 219 (1995)................................................................................7, 8, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................6

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006)...........................................................................3

*Cessna v. REA Energy Cooperative, Inc.*,
  258 F. Supp. 3d 566 (W.D. Pa. 2017)...........................................................11

*Danganan v. Guardian Prot. Servs.*,
  813 F. App'x 769 (3d Cir. 2020) .............................................................2, 13, 14, 16

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995).............................................................................17

*Estate of Evasew v. Evasew*,
  584 A.2d 910 (Pa. 1990)................................................................................17

*Fant v. Loandepot.com*,
  2020 WL 4504442 (E.D. Pa. Aug. 5, 2020) ..................................................13

*Flaster/Greenberg P.C. v. Brendan Airways, LLC*,
  2009 WL 1652156 (D.N.J. June 10, 2009)......................................................7

*Gordon v. United Cont'l Holding, Inc.*,
  73 F. Supp. 3d 472 (D.N.J. 2014) ...................................................................6

*Gregg v. Ameriprise Fin., Inc.*,
  245 A.3d 637 (Pa. 2021)................................................................................13

*Halpern v. Ricoh U.S.A., Inc.*,
  299 A.3d 1023 (Pa. Super. Ct. 2023).......................................................17, 18

*Hill v. Stadium Casino RE LLC*,
  2024 WL 4829721 (E.D. Pa. Nov. 18, 2024) ................................................11

*Howard v. United Airlines, Inc.*,
  No. 24-2929, 2025 WL 2106714 (D. Md. July 28, 2025) ..........................7, 10

*Hunt v. United States Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008)..................................................................................6, 13

*Inman v. Technicolor USA, Inc.*,
    2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) .........................................................3

*Kee v. Zimmer, Inc.*,
    871 F. Supp. 2d 405 (E.D. Pa. 2012) ....................................................................11

*Kemezis v. Matthews*,
    394 F. App'x 956 (3d Cir. 2010) .....................................................................11, 13

*In re Latam Airlines Grp. S.A.*,
    2023 WL 4741335 (S.D.N.Y. July 25, 2023) ................................................ *passim*

*LeBoon v. DS Waters of Am., Inc.*,
    2021 WL 1193239 (E.D. Pa. Mar. 30, 2021)..........................................................19

*Lemons v. Meguerian*,
    2024 WL 1328311 (3d Cir. Mar. 28, 2024)............................................................16

*Logan Generating Co., L.P. v. Dann Marine Towing*,
    669 F. Supp. 3d 321 (D.N.J. 2023) .......................................................................12

*Long v. Koninklijke Luchtvaart Maatschappij, N.V.*,
    2024 WL 3938825 (E.D. Va. Aug. 26, 2024)............................................................8

*Louis M. Marson Jr., Inc. v. All. Shippers, Inc.*,
    438 F. Supp. 3d 326 (E.D. Pa. 2020) ......................................................................9

*Martin v DHL Express (USA), Inc.*,
    580 F. Supp. 3d 66 (D.N.J. 2022) ...........................................................................7

*McLean v. Big Lots Inc.*,
    542 F. Supp. 3d 343, 351-52 (W.D. Pa. 2021) ......................................................12

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)..........................................................................................2, 6, 7

*Palek v. State Farm Fire & Cas. Co.*,
    535 F. Supp. 3d 382 (W.D. Pa. 2021)........................................................13, 15, 16

*Panitch v. Cont'l Airlines*,
    2008 WL 906240 (D.N.J. Mar. 31, 2008)................................................................7

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)...................................................................................19

iii

*Piccioli v. Faust Heating & A/C Co., Inc.*,
    299 A.3d 877 (Pa. Super. Ct. 2023)......................................................................13, 16

*Porreco v. Porreco*,
    811 A.2d 566 (2002) ......................................................................................................14

*Protica, Inc. v. iSatori Techs., LLC*,
    2012 WL 1071223 (E.D. Pa. Mar. 30, 2012)................................................................17, 18

*Rao v. Sleep No. Bed, Inc.*,
    2024 WL 4817375, at *3, *6 (W.D. Pa. Nov. 18, 2024) ............................................14, 15, 16

*Romeo v. Pittsburgh Assocs.*,
    787 A.2d 1027 (Pa. Super. 2001), *appeal pending*, 314 A.3d 513 (Pa. 2024) ........................17

*Shipwash v. United Airlines, Inc.*,
    28 F. Supp. 3d 740 (E.D. Tenn. 2014).................................................................................7, 10

*In re Shop-Vac Mktg. & Sales Prac. Litig.*,
    964 F. Supp. 2d 355 (M.D. Pa. 2013).................................................................................10

*Shulick v. United Airlines*,
2012 WL 315483, at *5 (E.D. Pa. Feb. 2, 2012) ........................................................................8, 9

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018)..........................................................................................10, 14, 15

*Silverstein v. Percudani*,
    2005 WL 1252199 (M.D. Pa. May 26, 2005)...................................................................11, 17

*Simijanovic v. Koninklijke Luchtvaart Maatschappij N.V.*,
    2024 WL 5059143 (E.D. Mich. Dec. 10, 2024) ...............................................................7, 10

*Spizzirri v. Zyla Life Scis.*,
    802 F. App'x 738 (3d Cir. 2020) ........................................................................................3

*Stadulis v. JetBlue Airways Corp.*,
    2023 WL 8437280 (D.N.J. Dec. 5, 2023).........................................................................7, 10

*Statland v. Am. Airlines, Inc.*,
    998 F.2d 539 (7th Cir. 1993) ..........................................................................................7, 10

*Thomas v. Transcore, LP.*,
    2024 WL 3993217 (M.D. Pa. Aug. 29, 2024) ................................................................. *passim*

*Weisblatt v. Minnesota Mut. Life Ins. Co.*,
    4 F. Supp. 2d 371 (E.D. Pa. 1998).................................................................................17, 18

*Williams v. Ying Zhou,*
   2019 WL 1379876 (D.N.J. Mar. 27, 2019)................................................................3

**Statutes**

Airline Deregulation Act, 49 U.S.C. § 41713 ........................................................ *passim*

Fair Credit Reporting Act, 15 U.S.C. § 1681................................................................19

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 ........................................8

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S.
   §§201-1 - 201-9.2 ........................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................6

Federal Rule of Civil Procedure 9(b)................................................................10, 14, 15

## **PRELIMINARY STATEMENT**

When one buys a plane ticket from British Airways Plc ("BA"), not surprisingly, one enters into a contract with BA. That contract is BA's Conditions of Carriage ("COC"). The plaintiff James Carney – a lawyer – admits that all customers (including him) agree to abide by the COC when buying a ticket. As the plaintiff's Complaint and electronic ticket receipt explain, the COC are available to customers in three ways: online, in print at the airport, or by request to BA.

The COC, among other things, publicly disclose BA's "No Show Policy," which provides that customers cannot fail to show up for their booked flights without consequence. Instead, BA explicitly discloses that, if one fails to cancel and is a no show for their outbound flight, then they will forfeit their return flight tickets (the "No-Show Policy"). To avoid this result, the customer need only contact BA prior to their outbound flight.

Despite BA presenting the COC to the plaintiff—and his express acceptance of the contract —the plaintiff claims BA hides its No-Show Policy. It does not. Failing to read the terms of the applicable contract is not fraud.[1] The plaintiff concedes in his Complaint (as he must) that he entered into a contract with BA. As such, he agreed to the COC and is bound by the No-Show Policy despite his choice not to read the COC. BA did exactly what the COC told Mr. Carney BA would do. The plaintiff booked round-trip flights on BA from Pittsburgh to London. He did not show up for his outbound flight or cancel it—thus violating the COC. He flew to London several days later on another airline, and when he sought to return home from London, BA advised him that his return flight was cancelled, just as the No-Show Policy spelled out it would be. Because

---

[1] Tellingly, the plaintiff does not bring a breach of contract claim against BA, nor could he. It was the plaintiff who failed to adhere to the express terms of the COC's No-Show Policy, not BA.

the No Show Policy was publicly disclosed, the plaintiff's claims for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and fraud fail.[2]

As a threshold matter, the plaintiff's claims must be dismissed with prejudice because they are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713 ("ADA"). The ADA explicitly preempts state-law claims "relating to rates, routes, or services" of any carrier. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 380 (1992). Courts regularly hold that the ADA preempts consumer protection claims against airlines. In a nearly-identical case, for example, plaintiffs brought consumer protection claims, including a UTPCPL claim, that challenged an airline's purportedly concealed no-show policy. *In re Latam Airlines Grp. S.A.*, 2023 WL 4741335 (S.D.N.Y. July 25, 2023). The Court dismissed the case because the claims were preempted as they related to airline rates and services, *id.* at *6, specifically holding that the UTPCPL claim was preempted because "it is a state law claim that relates to how [the airline] prices its flights and provides its services." *Id.* at *8 n.12. That same reasoning applies here and requires the same result. *See* Section I.

Even if the ADA did not preempt the plaintiff's claims (which it does), his claims fail for other reasons:

- There was no deception. Because BA publicly disclosed the No-Show Policy, nothing was hidden and there was no deceptive or fraudulent conduct, which defeats the claims. The plaintiff's electronic ticket receipt ("E-Ticket") also referenced the COC. *See* Section II.A.

- The plaintiff fails to allege causation, let alone the higher burden of justifiable reliance, first because the No-Show Policy was readily available to him and, second because plaintiffs cannot allege "justifiable reliance on deceptive conduct" where they have "only alleged that [the defendant] enforced the Agreement as written." *Danganan v. Guardian Prot. Servs.*, 813 F. App'x 769, 773 (3d Cir. 2020). BA simply followed its fully disclosed No-Show Policy after the plaintiff failed to show up for his flight. *See* Section II.B.

---

[2] On January 9, 2026, the plaintiff voluntarily dismissed his unjust enrichment claim (Count III) in the Complaint (ECF No. 1-1 ("Complaint" or "Compl.")) ¶¶ 8-9. *See* ECF Nos. 44, 45.

- The plaintiff fails to plead a duty to disclose for his omission-based theory because he does not allege facts to support such a duty under Pennsylvania law.   *See* Section II.C.

- The fraud claim also fails because the plaintiff fails plausibly to plead fraudulent intent.   The plaintiff alleges only conclusory allegations about BA's intent.   This is unsurprising, as BA simply followed its contractual obligations.   *See* Section II.D.

Therefore, BA respectfully requests that this Court dismiss the Complaint with prejudice, as leave to amend would be futile.   *See* Section III.

## FACTS[3]

### A.    Travel on BA Is Subject to the COC to Which Customers Consent.

BA is a global airline that offers one-way, round-trip, and multi-segment flights.   Compl. ¶¶ 6, 7.   As the plaintiff concedes, when a customer purchases a ticket from BA, the customer enters into a contract with BA (the COC).   *See id.* ¶¶ 8, 9; *see also* Declaration of Keara M. Gordon dated January 21, 2026 ("Gordon Decl."), Ex. A (archived version of COC dated June 8, 2023).[4]

---

[3] For purposes of this motion, BA accepts the plaintiff's allegations as true except to the extent that they are otherwise contradicted by the plaintiff's own Complaint or other judicially noticeable material.   BA reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (it should not).

[4] Exhibit references are to the exhibits attached to the Gordon Decl.   In deciding this motion to dismiss, this Court may consider "matters incorporated by reference or integral to the claim [and] items subject to judicial notice." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted).   Courts routinely take judicial notice of contracts and webpages that are integral to the complaint and contradict plaintiffs' claims.   For example, in *Inman v. Technicolor USA, Inc.*, 2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) the Court noted that "[t]o allow [the plaintiff] to rely on eBay's homepage but avoid dismissal by not referring to the User Agreement specifically would contravene the policy delineated by the United States Court of Appeals for the Third Circuit," and thus held that "we will take judicial notice of the User Agreement and the description of eBay's business model contained therein." *Id.* at *4 (citation omitted); *see also Williams v. Ying Zhou*, 2019 WL 1379876, at *4 n.9 (D.N.J. Mar. 27, 2019) (judicial notice of archived website content).   Here, the Complaint concedes the plaintiff entered into a contract (Compl. ¶¶ 8-9), references the applicable provision of the COC (*id.* ¶ 12), references "British Airways['] website" where it admits the COC is "available," (*id.* ¶ 9) and alleges that BA concealed the No-Show Policy when customers bought tickets.   *Id.* ¶ 48.   The archived BA webpage from June 2023 containing the COC is "integral to the Complaint" and judicial notice is thus proper. *See Inman*, 2011 WL 5829024, at *4; *Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir.

3

The plaintiff admits he entered into a contract with BA as "[a]ll flights on [BA] are governed by a set of Conditions of Carriage," which "are available on the [BA] website."  Compl. ¶¶ 8, 9 ("The current set of Conditions of Carriage are available on the British Airways website.").  Given that BA provides this information, the Complaint's allegation that "[p]urchasers of tickets from [BA] are not given copies of the [COC]" (Compl. ¶ 10) is without factual basis.

**B.    The COC Gave BA The Express Right to Cancel the Plaintiff's Flight When He Did Not Show Up for The Outbound Flight.**

In June 2023, when the plaintiff purchased his ticket, the COC provided that "[w]hen [customers] buy a ticket to travel on a flight we operate, [they] enter into a contract of carriage with us" and "[t]he contract is governed by the conditions in your ticket or itinerary and receipt … [and the] [C]onditions of [C]arriage."  Ex. A at 1.  The plaintiff acknowledges that the COC clearly stated that if a passenger "fail[s] to cancel a booking ***before*** the check-in deadline for [their] flight and ***do[es] not show up for the flight***, [BA] may decide to cancel [their] return or onward reservations."  *Id.* at pg. 5, section 3(c)(10) (emphasis added); *see also* Compl. ¶ 12 (citing Ex. A section 3(c)(10)).  To avoid this result, the COC informed "[passengers] [to] cancel a booking before the check-in deadline for [their] flight" because in that event, BA "will not cancel [their] return or onward reservations."  Ex. A at pg. 5, section 3(c)(9).

**C.    Plaintiff's E-Ticket Also Reminded Customers About the COC, the Importance of Reading it, and Provided a Link to Read it.**

While the plaintiff claims that "printed copies of the Conditions of Carriage are not available to the general public, including Purchasers, customers and prospective customers," Compl. ¶ 11, that allegation is contradicted by the plaintiff's own Exhibit A to his Complaint, which is the E-Ticket receipt he received.  *See* Gordon Decl. Ex. B at 12.  The E-Ticket contains

---

2020) (affirming judicial notice of a document "integral to the complaint because [the plaintiff's] claims are based on the document").

a section titled "**Conditions of Carriage**," which emphasizes "[i]t is important that you read this section carefully as it contains important information about the terms on which carriage and other services are provided to you." *Id.* (emphasis in original). The E-Ticket reminds customers that "[c]arriage and other services provided by the carrier are subject to [the COC] … which are hereby incorporated by reference." *Id.* The E-Ticket also explains that the COC are available in three ways: (1) by simply clicking on the hyperlink on the E-Ticket, which brings you to where they are available on the BA.com website and where one could easily print them; (2) "from the issuing carrier" (BA); or (3) "on request or can be obtained at the airport." *Id.*

> D.      **The Plaintiff, James T. Carney, Esq.**

The plaintiff alleges that on June 22, 2023, he purchased a round-trip ticket from BA to travel September 21, 2023 from Pittsburgh to London. Compl. ¶¶ 2, 23. While the plaintiff concedes that his ticket is governed by the COC, *id.* ¶ 8, the Complaint does not clarify whether the plaintiff read the COC (including the No-Show Policy), which, as discussed above, is available during the ticketing process and on BA's website. The plaintiff admits that he "never cancelled" and did not show up for his outbound flight to London.[5] *Id.* ¶¶ 27-29. Instead, he bought a one-way ticket to London on another airline two days later. *Id.* ¶ 29. When the plaintiff attempted to take his return flight back to Pittsburgh, BA advised him that, in accordance with the COC, it had cancelled his return flight. *Id.* ¶ 31. The plaintiff alleges that he tried to purchase another ticket back to Pittsburgh with BA but the "seat was sold," so he bought a return flight with another airline. *Id.* ¶¶ 32, 33.

---

[5] Exhibit B to the Gordon Decl. includes an e-mail from BA to the plaintiff on September 20, 2023 (that he submitted with his Complaint) that reminded him to "check-in" for his flight and included a link to BA's website with "direct access to [his] booking and services," including "information to help you take care of everything you need for your trip." Ex. B at 1, 3. As such, the plaintiff could easily have cancelled his trip per the No-Show Policy and complied with the COC.

Even though the plaintiff agreed to the COC and despite the fact that the No-Show Policy was repeatedly disclosed, the plaintiff claims BA hid the No-Show Policy from him. *Id.* ¶¶ 48, 14-21. Based on this faulty premise, the plaintiff attempts, purportedly on behalf of a class of Pennsylvania customers, to assert two claims against BA: (1) a violation of the UTPCPL, *id.* ¶¶ 45-49; and (2) fraud, *id.* ¶¶ 50-52. As a remedy, he seeks "the value of the forfeited tickets." *Id.* ¶ 49.

## LEGAL STANDARD

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not "contain sufficient factual matter … to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (dismissing claim) (citation omitted).

## ARGUMENT

## THE ADA PREEMPTS THE PLAINTIFF'S CLAIMS.

To prevent states from "undo[ing] federal deregulation with regulation of their own," *Morales*, 504 U.S. at 378, the ADA includes a broad preemption provision that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Therefore, actions under state law "having a connection with or reference to airline 'rates, routes, or services' are preempted." *Morales*, 504 U.S. at 383-84 (noting "relating to" expresses a broad preemptive purpose).

In particular, the ADA "pre[]empts the States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes." *Id.* at 378. "The Supreme Court's broad interpretation of the ADA preemption clause to eschew state consumer protection statutes in general, clearly suggests that [the state consumer protection] claims are similarly preempted." *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480

6

(D.N.J. 2014) (consumer protection claims preempted); *see also Flaster/Greenberg P.C. v. Brendan Airways, LLC*, 2009 WL 1652156, at *18 (D.N.J. June 10, 2009) (the ADA leaves no "room for a consumer fraud act claim against an airline").  As a result, courts routinely hold that state consumer protection claims that sound in fraud—including violations of the UTPCPL and fraud—and relate to airline rates and services are preempted.  *See, e.g.*, *Morales*, 504 U.S. at 390–93 (state consumer protection claim preempted); *American Airs., Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (same); *Martin v DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 73 (D.N.J. 2022) (claim "akin to fraud" preempted where service fee was "plainly 'related to a price, route, or service of' [defendant]"); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993) (claims preempted; "We think it obvious that canceled ticket refunds relate to rates"); *Flaster/Greenberg P.C.*, 2009 WL 1652156, at *18 (consumer protection claim for cancelled tickets preempted as it related to services); *In re Latam Airlines*, 2023 WL 4741335, at *6 (consumer protection claims preempted as related to both rates and services); *Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d 740, 748 (E.D. Tenn. 2014) (claims preempted; flight cancellation allegations leave "little question that plaintiff's complaint states claims that relate to the defendant's services as an air carrier"); *Stadulis v. JetBlue Airways Corp.*, 2023 WL 8437280, at **5, 8 (D.N.J. Dec. 5, 2023) (claims preempted because mask mandate related to airline "services"); *Howard v. United Airlines, Inc.*, No. 24-2929, 2025 WL 2106714, at *5 (D. Md. July 28, 2025) (claims preempted because "[t]he ability of a passenger to board a flight is directly related to the services provided by an airline"); *Panitch v. Cont'l Airlines*, No. 06-3611, 2008 WL 906240, at *5 (D.N.J. Mar. 31, 2008) (claims preempted; in-flight food and beverages were "a 'service' within the meaning of the [ADA]"); *Simijanovic v. Koninklijke Luchtvaart Maatschappij N.V.*, 2024 WL 5059143, at *3 (E.D. Mich. Dec. 10, 2024) (consumer protection claims preempted; "the thrust of [the plaintiff's] allegations

7

is that KLM's false advertising caused him to overpay for his flight," which "'quite obviously' relates to rates"); *Long v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2024 WL 3938825, at *5 (E.D. Va. Aug. 26, 2024) (consumer protection claims preempted as relating to "services" where "alleged service-related misrepresentations induced [the plaintiff] and others to fly KLM at inflated prices").

In *Wolens*, a plaintiff brought a putative class action under the Illinois Consumer Fraud and Deceptive Practices Act claiming an airline deceptively marketed its frequent flyer program. 513 U.S. at 224-25. The Supreme Court held that the claim was preempted because a plaintiff cannot use state consumer protection laws to "guide and police the marketing practices of the airlines." *Id.* at 228. Instead, the U.S. Department of Transportation "retains authority to investigate unfair and deceptive practices and unfair methods of competition by airlines…." *Id.* at 228, n.4. The Court held that the claims "relate[d] to 'rates' i.e., American's charges in the form of mileage credits for free tickets and upgrades, and to 'services' i.e., access to flights." *Id.* at 226.

In *Shulick v. United Airlines*, the plaintiffs brought UTPCPL and negligent misrepresentation claims after a series of weather-related issues that implicated "changes in flight schedules, subsequent notification of changes, rebooking, and refund policies" and alleged that the airline made "'misleading deceptive, and or confusing representations about their services' in order to engage and solicit [the plaintiffs'] business, but subsequently failed to provide the contracted-for services." 2012 WL 315483, at *5 (E.D. Pa. Feb. 2, 2012). The Court held that "permitting this claim to move forward as plead[ed] would impermissibly sanction regulation of the manner in which the airlines advertise [their] services, interfere with the provision of services to [their] passengers, and would constrain the airlines' ability to cancel flights and/or routes, all of which offends the stated purpose of the [ADA] and is proscribed by the Act's preemption clause." *Id.* at

8

*6 (cleaned up and citation omitted).  Thus, the Court dismissed the claims as preempted.  *Id.*; *see also Louis M. Marson Jr., Inc. v. All. Shippers, Inc.*, 438 F. Supp. 3d 326, 336 (E.D. Pa. 2020) (UTPCPL claim preempted; "FAAAA preempts state consumer protection laws such as the UTPCPL to the extent that they have "'a connection with, or reference to,' carrier 'rates, routes, or services,'" even if "'only indirect'").

In re Latam Airlines* is on point.  There, the plaintiff alleged, as here, that an airline's no-show policy was deceptively concealed and claimed that "LATAM unfairly retain[ed] the price customers paid for air travel after cancelling a leg of their itinerary pursuant to the No-Show Policy, allowing the airline to resell the tickets and 'net the price of a single flight twice.'"  2023 WL 4741335, at *6.  The plaintiff asserted claims for violation of Florida's consumer protection law and a UTPCPL claim, and the Court held the claims were preempted by the ADA.  *Id.*  The Court explained, "it is plain that an airline's failure to issue refunds for forfeited tickets ***'relate[s] to' prices*** charged by an air carrier and, thus, that claims based on those allegations are preempted by the ADA."  *Id.* (emphasis added).  The plaintiff argued that their claims did not relate to rates, but rather to "the *manner* in which [the airline] handles the itineraries of customers who do not appear for the first leg of their journey through its no-show policy."  *Id.*  The Court rejected this argument, holding that "claims that relate to services are also preempted" and the complaint made "***clear that Plaintiff's claim does indeed 'relate[ ] to' both services and rates.***"  *Id.* (emphasis added); *see also id.* *8 n.12 (holding the same for UTPCPL claim).

The same conclusion follows here.  Here, the plaintiff's claims relate to "prices charged by an air carrier"—"rates"—and they are preempted.  The Complaint objects that BA "does not ***compensate*** Purchasers [] losing their tickets in accordance with [the No-Show Policy]," and that "Purchasers lost the remaining value of their tickets."  *See* Compl. at ¶ 21 (emphasis added), ¶ 19.

Specifically, for his purchase, the plaintiff claims that BA "was able to resell the portion of the ticket that [he] was forced to forfeit" while he was "forced to purchase a ticket on an American Airlines flight at a cost of $1010.80." *Id.* ¶¶ 33, 37.  As a result, just as in *In re Latam Airlines*, *Statland*, *Simijanovic*, and *Wolens*, the claims unquestionably relate to rates.

The plaintiff's claims are also preempted because they relate to airline services.  The plaintiff claims that BA "automatically cancels return or onward reservations," which relates directly to the provision of air travel, an airline's basic service, and causes passengers to buy tickets on other flights. *Id.* ¶¶ 13, 20, 21.  Allegations like these, involving BA's No-Show Policy under which it purportedly fails to provide its core service of transportation, clearly relate to airline "services"—just as in *In re Latam Airlines*, *Stadulis*, *Shulick*, *Shipwash*, *Howard*, *Flaster*, and *Branche.*  Here too, all of the plaintiff's claims are preempted, and the Complaint must be dismissed with prejudice.

**THE UTPCPL AND FRAUD CLAIMS FAIL FOR ADDITIONAL REASONS.**

The plaintiff's claims under the UTPCPL's catchall provision and for common law fraud, Compl. ¶¶ 45-49, 50-42, may be assessed together because they share certain common elements. Neither state a claim.  As an initial matter, both the UTPCPL and fraud claims are subject to Rule 9(b)'s heightened pleading requirements.  To satisfy Rule 9(b), the plaintiff must allege "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (affirming dismissal of fraud claim where justifiable reliance was "insufficiently pleaded under Rule 9(b)"); *Thomas v. Transcore, LP.*, 2024 WL 3993217, at *6 (M.D. Pa. Aug. 29, 2024) (dismissing fraud and UTPCPL claims; the UTPCPL "is subject to the heightened pleading requirements of" Rule 9(b)); *In re Shop-Vac Mktg. & Sales Prac. Litig.*, 964 F. Supp. 2d 355, 366 (M.D. Pa. 2013) (dismissing consumer protection claims, including UTPCPL

10

claim); *Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010) (dismissing claims); *Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 412-13 (E.D. Pa. 2012) (dismissing omission-based fraud and UTPCPL claims that the defendant "concealed [important] facts" by failing "to allege facts indicating the date, time, and place of the alleged fraud").

For the UTPCPL, the plaintiff must allege: "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Cessna v. REA Energy Cooperative, Inc.*, 258 F. Supp. 3d 566, 583 (W.D. Pa. 2017) (dismissing claim). The fraud claim similarly requires the plaintiff to allege: "a representation," "made falsely," "justifiable reliance on the misrepresentation," and "a resulting injury proximately caused by the reliance," *Thomas*, 2024 WL 3993217, at *6, and separately, the fraud claim also requires fraudulent intent. *See id.* Finally, for omission-based theories of both claims, the plaintiff must also allege a duty to disclose. *Id.* (citation omitted); *Silverstein v. Percudani*, 2005 WL 1252199, at *8 (M.D. Pa. May 26, 2005) (dismissing claims).

Here, the plaintiff's UTPCPL and fraud claims must be dismissed because: (1) there is no omission because the No-Show Policy was readily available to the plaintiff; (2) the plaintiff cannot plausibly plead justifiable reliance or causation for the same reason: BA disclosed the No-Show Policy prior to purchase, and it simply enforced the COC as written, which is not fraud; (3) the plaintiff does not allege facts that establish BA owed him a duty of disclosure; and, (4) specific to the fraud claim, the plaintiff fails to allege BA acted with fraudulent intent.

### A.     There Was No Omission.

The plaintiff must plead "a deceptive act that is likely to deceive a consumer acting *reasonably* under similar circumstance." *Hill v. Stadium Casino RE LLC*, 2024 WL 4829721, at *4 (E.D. Pa. Nov. 18, 2024) (dismissing UTPCPL claim) (emphasis added). Courts dismiss

11

UTPCPL and fraud claims where plaintiffs "failed to plead any facts indicating that Defendants acted deceptively" and "just recit[ed] the statutory requirements to state a claim." *Id.*  In particular, courts dismiss omission claims where, as here, the agreement "plainly disclosed" the purportedly hidden term.  *See, e.g.*, *Logan Generating Co., L.P. v. Dann Marine Towing*, 669 F. Supp. 3d 321 (D.N.J. 2023).

For example, in *Logan*, the defendant brought a fraudulent inducement counterclaim, arguing that the plaintiff knew that it may terminate an agreement upon a certain event but did not inform the defendant.  *Id.* at 339.  In response, the plaintiff pointed out that the possibility of termination upon that event was expressly part of the parties' agreement.  *Id.*  The Court dismissed the claim because "the 'fraud' that [the defendant] alleges was thus plainly disclosed in the Termination [a]greement," and the defendant could not claim otherwise.  *Id* at 340.

Similarly, in *McLean v. Big Lots Inc.*, the plaintiffs asserted UTPCPL claims alleging that the defendants falsely represented whether their products (face masks) were subject to sales tax. 542 F. Supp. 3d 343, 351-52 (W.D. Pa. 2021).  The Court held that "allegations of fraudulent, unfair, or deceptive conduct are lacking," because the plaintiffs admitted "that Defendants advertised the sales price of non-medical protective face masks and identified that price and the amount of sales tax on their receipts."  *Id.*  Such "conduct cannot be considered deceptive."  *Id.*

So too here.  The plaintiff alleges that BA "conceal[s] their forfeiture policy in Section 3(c)(10) of the [COC]" and fails to "alert[]" customers of the "existence of such policy in materials given to them at the time of purchase of tickets."  Compl. ¶ 48.  That is not true.  As the plaintiff concedes, he agreed to the COC and thus the No-Show Policy.  *Id.* ¶ 8.  And, just as in *McLean*, BA publicized online and made available in hard copy at the airport the COC, including to the plaintiff.  *See supra* Facts Sections B, C.  The COC plainly discloses the No Show Policy.  Ex. A

12

at sections 3(c)(10), 3(c)(9).  As a result, the plaintiff cannot claim that BA concealed anything or that he was unaware of what would result if he did not show up for his flight.

### B.     The Plaintiff Fails to Plead Justifiable Reliance and Causation.

Even if BA somehow concealed information (it did not), the plaintiff cannot establish justifiable reliance or causation.  Causation is a necessary element of both claims.  *See, e.g.*, *Piccioli v. Faust Heating & A/C Co., Inc.*, 299 A.3d 877 (Pa. Super. Ct. 2023) (dismissing claim; "an individual seeking relief under the UTPCPL must establish the elements of justifiable reliance and causation") (citing *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021)); *Thomas*, 2024 WL 3993217, at *6 (dismissing fraud claim; requiring "justifiable reliance on the misrepresentation [and] a resulting injury proximately caused by the reliance").  In addition, "justifiable reliance is an element of both a fraud claim and a UTPCPL claim." *Fant v. Loandepot.com*, 2020 WL 4504442, at *4 (E.D. Pa. Aug. 5, 2020) (dismissing fraud and UTPCPL claims because plaintiff "ha[d] not alleged justifiable reliance"); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 226 (3d Cir. 2008) (affirming dismissal; "private plaintiffs must allege justifiable reliance under the [UTPCPL]").

To demonstrate either element, the plaintiff's complaint must establish that, had the plaintiff known of the deceptive conduct, he would have acted differently.  *Hunt*, 538 F.3d at 224. In addition, "[j]ustifiable reliance requires a plaintiff to 'show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [fraudulent or deceptive conduct].'"  *Danganan*, 813 F. App'x at 773.  The plaintiff "must at least allege facts from which plausible inferences of … justifiable reliance … can be drawn."  *Kemezis*, 394 F. App'x at 959 (affirming dismissal) (citing *Hunt*, 538 F.3d at 224-27).  "Pennsylvania courts 'hesitate to find reliance justified where the party claiming reliance had an adequate opportunity to verify' allegedly deceptive statements."  *Palek v. State Farm Fire & Cas. Co.*, 535 F. Supp. 3d

13

382, 391-92 (W.D. Pa. 2021) (Wiegand, J.) (citing *Porreco v. Porreco*, 811 A.2d 566 (2002) (dismissing UTPCPL claim)).  Further, the plaintiff must also plead justifiable reliance with "sufficient particularity" required by Rule 9(b).  *Shuker*, 885 F.3d at 779 (affirming dismissal); *Thomas*, 2024 WL 3993217, at \*5 (dismissing claim; "Plaintiff does not explain what particular representations she relied upon, how she relied upon them, or why that reliance was justifiable").

For example, in *Danganan*, the plaintiff brought a putative class action asserting a UTPCPL claim against a home security company when it charged him for home security services even after he had moved homes.  813 F. App'x at 771.  Yet, the contract expressly stated that the plaintiff's payment obligations continued even if he left the home.  *Id.*  As a result, the trial court dismissed the case, and the appellate court affirmed, explaining it did so "[b]ecause the clear terms of the agreement authorized [the defendant] to continue to seek payment after [the plaintiff] moved and did not constitute deceptive conduct on which [the plaintiff] could justifiably rely." *Id*. at 771. The plaintiff did not "allege justifiable reliance on deceptive conduct because the [a]greement's terms [were] clear," and he did not allege he had relied on any contradictory statements by the defendant, such as a "statement by Guardian that he could move and sell his home and not continue to pay." *Id.* at 773.  The plaintiff "only alleged that [the defendant] enforced the [a]greement as written," and because the plaintiff's action was "prohibited by the clear terms" of the agreement, the plaintiff failed to allege reliance on any "fraudulent or deceptive conduct." *Id.* at 773.  The Court also rejected the plaintiff's argument that the defendant's "post-contractual conduct" was a UTPCPL violation because "Guardian made clear that the terms of the Agreement continued to apply." *Id.*  Therefore, the Court affirmed dismissal of the plaintiff's complaint. *Id.* at 775.

Likewise in *Rao v. Sleep No. Bed, Inc.*, the plaintiff brought UTPCPL and common law fraud claims, among others, alleging that he was fraudulently induced to purchase a bed because

14

"he relied upon the assertion of [a] 90-day warranty period" before finalization of the purchase and that he was "tricked" into applying for a credit card as part of the purchase. 2024 WL 4817375, at *3, *6 (W.D. Pa. Nov. 18, 2024). The court dismissed the UTPCPL claim because the plaintiff "did not allege that he made any effort to discern the scope of the trial period for the bed, including whether a deposit or applying for financing was a prerequisite for taking advantage of the trial period," and otherwise "did not allege that he made an effort to ascertain the scope of any details," which "would have been required for him to successfully plead justifiable reliance." *Id.* Similarly, for the fraud claim, the Court held the plaintiff "only described what he believed - that he would purchase the bed absent a credit card agreement - without any detail concerning how Synchrony or Sleep Number allegedly caused this belief," and these "general, legal conclusions" were insufficient to state a claim. *Id.*

Finally, in *Palek*, the plaintiffs brought a UTPCPL claim alleging that they were misled by their insurer about the kinds of damage that could occur to their in-ground swimming pool that would be covered under their policy. 535 F. Supp. 3d at 385. When the pool was damaged and the insurer denied their claim, the plaintiffs claimed they relied on the defendant's "general assurance that foreseeable harm to their pool would be covered." *Id.* at 386. This Court dismissed the claim "for failure to plead facts showing justifiable reliance" because "despite receiving only vague assurances about the coverage provided under the Policy, [p]laintiffs appear to have made no effort whatsoever to ascertain the actual scope of coverage under the Policy." *Id.* at 390, 392.

So too here. First, the plaintiff fails to plead the justifiable reliance element with the particularity required by Rule 9(b) because his allegations are merely a "formulaic recitation of the element" (Compl. ¶ 35), which is conclusory and insufficient. *See Shuker*, 885 F.3d at 779 (affirming dismissal of fraud claim). Second, the plaintiff cannot establish justifiable reliance

15

because BA simply "enforced the [a]greement as written," and so there was no deceptive conduct for him to rely on. *Danganan*, 813 F. App'x at 773. Third, the plaintiff's allegation that he "reasonably relied on the omission of any notice [of the No-Show Policy]," *see* Compl. ¶ 30, fails because he "had an adequate opportunity to verify allegedly deceptive statements." *Palek*, 535 F. Supp. 3d at 391-92; *Danganan*, 813 F. App'x at 771. The plaintiff concedes that he entered into a contract (the COC) with BA when buying his ticket, which was available on BA's website, and that BA clearly explained the No-Show Policy in the COC. Compl. ¶¶ 8-9; Ex. A. All the plaintiff (a lawyer) needed to do to inform himself about the No-Show Policy was read it, but he does not allege that he even attempted to do so.[6] *See generally* Compl. And fourth, the plaintiff does not allege BA made any false statements about the No-Show Policy on which he supposedly relied. He suggests (without explicitly pleading) that he understood differently what would happen if he no-showed for his flight, but, as in *Rao*, he provides "no detail" as to how BA possibly could have "caused this belief," 2024 WL 4817375, at *6, and the COC made plain what actually would occur. These same deficiencies prevent him from plausibly pleading causation. *See Piccioli*, 2023 WL 3270881, at *7 (affirming dismissal of UTPCPL claim where the plaintiff failed to demonstrate that she suffered an ascertainable loss "as a result of [the defendant's] 'deceptive statements'").

### C.    BA Did not Have a Duty to Disclose.

Even if BA had not disclosed the No-Show Policy (it unquestionably did), the plaintiff's claims fail because the plaintiff has not plausibly alleged a duty to disclose by BA.

"A party may be held liable for fraudulent concealment only if they have 'an independent duty to disclose the omitted information.'" *Lemons v. Meguerian*, 2024 WL

---

[6] Even if the plaintiff did not read the COC, as he admits, he was still bound to their terms. Compl. ¶ 8 ("All flights on Defendant are governed by a 21 set of Conditions of Carriage").

16

1328311, at *3 (3d Cir. Mar. 28, 2024) (quoting *Estate of Evasew v. Evasew*, 584 A.2d 910, 913 (Pa. 1990)). "[I]n order to maintain a failure-to-disclose theory under the [UTP]CPL-catch-all provision, a consumer must plead and prove a duty to disclose." *Halpern v. Ricoh U.S.A., Inc.*, 299 A.3d 1023, 1029 (Pa. Super. Ct. 2023) (citing *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027, 1033 (Pa. Super. 2001), *appeal pending*, 314 A.3d 513 (Pa. 2024)). This duty may arise only in limited circumstances where one party shows "a relationship involving trust and confidence; and that the proof must show the confidence reposed by one side and the domination and influence exercised by the other." *Estate of Evasew*, 584 A.2d at 913. As such, Pennsylvania federal courts recognize "a duty to disclose does not typically arise unless there is a confidential or fiduciary relationship…." *Protica, Inc. v. iSatori Techs., LLC*, 2012 WL 1071223, at *5 (E.D. Pa. Mar. 30, 2012) (dismissing fraud by omission claim for lack of alleged duty).

Where a contract is involved, "Pennsylvania courts analyzing whether there was a duty to speak rely almost exclusively on the nature of the contract between the parties and the scope of one party's reliance on the other's representations." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995). Courts have also declined to find a duty to disclose where there is merely a "quintessential arm's-length relationship, that of seller and buyer." *Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 381 (E.D. Pa. 1998); *see also Silverstein*, 2005 WL 1252199, at *8 ("Plaintiff's allegations are insufficient to impose liability for failure to disclose because they cannot support a claim that the Chase defendants had a duty to disclose information."). Pennsylvania courts typically only impose a duty where "the buyer is at the whim of the seller to disclose such latent problems [like a defect], which are not discoverable by other reasonable means." *Duquesne*, 66 F.3d at 612.

17

For example, in *Protica*, the plaintiff had "not plead the source of [the defendant's] alleged duty to disclose … and because [its] duty to speak or disclose is a threshold requirement for [the plaintiff] to state a fraudulent concealment claim under Pennsylvania law," the Court dismissed the claim. 2012 WL 1071223, at *5. And in *Halpern*, the Court dismissed the complaint, holding that "[n]o allegations in the amended complaint establish a common-law duty by Ricoh to disclose" an alleged product defect and the plaintiff "has clearly failed to state a claim that Ricoh violated the catch-all provision of the [UTP]CPL by its silence…." 299 A.3d at 1030; *see also Weisblatt*, 4 F. Supp. 2d at 381-82 (dismissing fraud and UTPCPL claims at summary judgment for lack of duty to disclose, holding "a reasonable buyer of insurance (or any other product) must, at peril of caveat emptor, act as a reasonable consumer, e.g., research her needs from multiple sources and price-shop for policies.").

The plaintiff here fails also to establish a duty on BA to disclose. As an initial matter, the plaintiff does not allege ***any relationship*** with BA that could establish BA's duty of disclosure, let alone the required fiduciary, confidential, or other special relationship. *See* Compl. ¶¶ 46-51. As such, dismissal is required. *See Protica*, 2012 WL 1071223, at *5. In addition, even if he had attempted to plead such a duty (he did not), it would fail. Under Pennsylvania law, BA is not in a fiduciary relationship with its customers. Therefore, both claims fail because the plaintiff failed to plead a duty to disclose.

### D.     There is No Fraudulent Intent Plausibly Alleged.

The plaintiff's fraud claim separately fails because he does not plead fraudulent intent. "Plaintiff's fraud claims [] require plausible allegations of scienter, *i.e.*, fraudulent intent." *Thomas*, 2024 WL 3993217, at *6. A "conclusory allegation of intent" is "deficient in its own right." *Id.* (citation omitted).

18

In *Thomas*, the plaintiff alleged that the defendant, who ran an EZ Pass toll payment system, misled her by "by concealing from her that her transponder was not working." *Id.* But the Court held this "conclusory allegation" was "directly refuted by Plaintiff's contract" that "state[d] that she would be responsible for payment of V-Tolls if her transponder was not read correctly." *Id.* The Court also held the defendant could not have plausibly "intend[ed] to defraud Plaintiff" because the defendant's representative told her "the very information Plaintiff claims was concealed." *Id.*

Same here. The plaintiff alleges only that BA's "conduct resulted from an evil motive and a reckless indifference to the rights of others." Compl. ¶ 52. This conclusory allegation of intent is deficient. Moreover, the COC's plain language refutes this conclusory allegation since BA expressly disclosed that which was allegedly concealed: the No-Show Policy. *Id.* ¶¶ 8, 9. As in *Thomas*, BA merely followed its disclosed policy and cancelled the plaintiff's return flight, which is a "reasonable, not fraudulent" action and makes it implausible as a matter of law that BA "intended to defraud Plaintiff." 2024 WL 3993217, at *6.

## DISMISSAL WITH PREJUDICE IS APPROPRIATE.

This Court should dismiss the Complaint with prejudice because "dismissal without leave to amend is justified where amendment would be futile." *LeBoon v. DS Waters of Am., Inc.*, 2021 WL 1193239, at *8 (E.D. Pa. Mar. 30, 2021) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). In *LeBoon*, the Court declined to grant leave to amend where the plaintiff "cannot amend his pleadings to cure the FCRA preemption of his state law claims." *Id.* Likewise, in *Latam Airlines*, the Court dismissed the plaintiff's consumer protection claims, including a UTPCPL claim, "with prejudice," holding "amendment would be futile" because "among the complaint's deficiencies are [ADA] preemption issues that prevent [the plaintiff] from asserting— and the Court from adjudicating—its claims as pleaded." 2023 WL 4741335, at *8.

19

The same result is compelled here.  Because the plaintiff's claims are preempted under the ADA as relating to both rates and services, *see id.*; *supra* Section I, and the plaintiff cannot amend his pleading to cure this fundamental deficiency, leave to amend would be futile and dismissal with prejudice is appropriate.

**CONCLUSION**

BA respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: January 21, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/  Stephen H. Barrett*
Stephen H. Barrett
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA  19103-7300
215-656-2455
Stephen.barrett@us.dlapiper.com

Keara M. Gordon*
Colleen Carey Gulliver*
Connor D. Rowinski*
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
connor.rowinski@us.dlapiper.com

(**admitted pro hac vice*)

*Counsel for Defendant British Airways Plc*

20

**CERTIFICATE OF CONFERRAL**

Pursuant to Rule II.B of Your Honor's Practices and Procedures, counsel for Defendant British Airways Plc certifies they conferred via videoconference on January 9, 2026 with Plaintiff James T. Carney and his counsel regarding the arguments asserted in BA's motion to dismiss.  The parties were unable to reach a resolution.

*/s/  Stephen H. Barrett*
Stephen H. Barrett

**CERTIFICATE OF SERVICE**

I certify that on January 21, 2026 the foregoing document was sent via ECF notice to the plaintiff and his counsel:

James T. Carney (Pa. 00232)
845 Northridge Drive
Pittsburgh, PA 15216
412-657-0992
Jtcarney10@comcast.net

David. K. McMullin
2312 Southampton Dr.
Upper St. Clair, PA 15241
412-220-2281
dave@mcmullinlawgroup.com

*/s/  Stephen H. Barrett*
Stephen H. Barrett